**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF INDIANA**
**AT INDIANAPOLIS**

IN RE:                                          :    CASE NO. 16-05369-JMC-7
  Clifford Ray Tawney                    :
  Kelly Jean Tawney                       :
                                                :    Chapter 7
                                                :
                                                :
                                Debtors.    :    Judge James M Carr
                                                :

---

**MOTION FOR RELIEF FROM AUTOMATIC STAY**
**AND ABANDONMENT WITH 30 DAY WAIVER**
**AND NOTICE OF OBJECTION DEADLINE**

---

The Creditor, Deutsche Bank National Trust Company, as Trustee on behalf of the holders of the Terwin Mortgage Trust 2006-11ABS, Asset-Backed Certificates, TMTS Series 2006-11ABS ("Creditor"), hereby moves the Court, pursuant to 11 U.S.C. §362(d) and §554 to lift the automatic stay and abandon the following real property:

    8512 Green Valley Drive, Indianapolis, IN 46217 ("Property")

In support of the motion, the Creditor states the following:

    1.    The Debtors filed a chapter 7 case on July 13, 2016 ("Petition Date").

    2.    As of the Petition Date, the Creditor was the holder of a claim secured by the Property, more particularly described in the mortgage - a copy of which is attached as **Exhibit A**.

    3.    The above described mortgage was given to secure a promissory note ("Note") dated May 25, 2006 and made payable to the Investaid Corporation in the original sum of $86,720.00 - a copy of which is attached as **Exhibit B**.

    4.    Creditor perfected an interest in the Property as evidenced by the Assignment of Mortgage attached as **Exhibit C**.

    5.    Creditor is also the holder of a Loan Modification Agreement – a copy of which is attached as **Exhibit D**.

    6.    As of July 21, 2016, the outstanding principal of the Note was $85,407.92.

    7.    Installments have not been paid according to the terms of the Note and Mortgage. As of July 21, 2016, the mortgage loan is due for September 1, 2012 to July 1, 2016. If any months should come due and owing, after aforementioned date, those too shall be incurred.

8.    Specialized Loan Servicing LLC services the loan on the Property referenced in this Motion.  In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Creditor or Creditor's successor or assignee. Creditor, directly or through an agent, has possession of the Note.  The Note is either made payable to Creditor or has been duly endorsed.  Creditor is the original mortgagee or beneficiary or the assignee of the Mortgage/Deed of Trust.

9.    Trinity Group Financial may claim an interest in the Property by virtue of being the holder of a lien in the approximate amount of $11,877.00.

10.    The Property is burdensome to the estate and is of inconsequential value and/or benefit to the estate.  Cause exists to lift the automatic stay since the interest to the Creditor is not being adequately protected.

11.    In the event the Order granting Creditor's Motion for Relief from Automatic Stay and Abandonment with 30 day Waiver is entered, the provisions of Bankruptcy Rule 4001(a)(3) shall be waived and said Order shall be effective immediately.

12.    The Creditor hereby waives the right under 11 U.S.C. §362(e) to a hearing on this motion within thirty (30) days of the date it is filed.

**PLEASE TAKE NOTICE THAT** any objection must be filed with the Bankruptcy Clerk within **14 days** of the date of this notice or such other time period as may be permitted by Fed.R. Bank.P. 9006(f).  Those not required or not permitted to file electronically must deliver any objection by U.S. Mail, courier, overnight/express mail, or in person at:

US Bankruptcy Clerk's Office
Southern District of Indiana at Indianapolis
116 U.S. Courthouse, 46 East Ohio Street, Indianapolis, IN 46204

The objecting party must ensure delivery of the objection to the party filing the motion.  **If an objection is NOT timely filed, the requested relief may be granted.**

WHEREFORE, the Creditor moves the Court to enter an order lifting the automatic stay and abandoning the Property, and granting such other relief as appropriate.

Respectfully submitted,

/s/ David C. Nalley

David C Nalley
Attorney for Creditor
Reisenfeld & Associates, LPA-LLC
3962 Red Bank Road
Cincinnati, OH 45227
Voice: (513) 322-7000
Facsimile: (513) 322-7099
INBK@rslegal.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served on July 26, 2016 by regular U.S. Mail, postage prepaid, or by electronic filing upon the following:

Clifford Ray Tawney, Debtor
576 Shady Brook Heights
Greenwood, IN 46142

Kelly Jean Tawney, Debtor
576 Shady Brook Heights
Greenwood, IN 46142

Trinity Group Financial, Lienholder
9247 N. Meridian Street, Suite 101
Indianapolis, IN 46260

Chad William Garrapy, Counsel for Debtor
55 E. Monroe, Suite 3400
Chicago, IL 60603

Gregory K. Silver, Bankruptcy Trustee
342 Massachusetts Avenue #400
Indianapolis, IN 46204

U.S. Trustee
101 West Ohio Street Suite 1000
Indianapolis, IN 46204

*All Creditors on Attached Matrix

/s/ David C. Nalley
David C Nalley

# 1:16-bk-05369 | Clifford Ray Tawney and Kelly Jean Tawney

Find What: enter search term                    Premium Search

| Creditor | Code | Type |
|---|---|---|
| **AIT Laboratories**<br>Bankruptcy Department<br>2265 Executive Dr Indianapolis,IN 46241 | 13985915 | (cr) |
| **American Financial Credit Ser.**<br>Attn: Bankruptcy Department<br>10333 N Meridian St Ste 270 Indianapolis,IN 46290 | 13985835 | (cr) |
| **American Medical Response of IN**<br>Bankruptcy Department<br>145 Technology Pkwy NW, Ste 100 Berkeley Lake,GA 30092 | 13985904 | (cr) |
| **Americollect**<br>Bankruptcy Dept.<br>PO Box 1566 Manitowoc,WI 54220 | 13985910 | (cr) |
| **Ameripath Indianpolis PC**<br>Attn: Bankruptcy Department<br>13179 Collection Center Drive Chicago,IL 60693 | 13985849 | (cr) |
| **Andrews & Cox PC**<br>9247 N Meridian St, Ste 101<br>Indianapolis,IN 46260 | 13985847 | (cr) |
| **Anytime Fitness**<br>Bankruptcy Department<br>967 E County Line Rd Greenwood,IN 46143 | 13985936 | (cr) |
| **Bay Area Credit Service**<br>Bankruptcy Department<br>PO Box 467600 Atlanta,GA 31146 | 13985918 | (cr) |
| **Beech Grove Family Physicans**<br>Attn: Bankruptcy Department<br>P.O. Box 664054 Indianapolis,IN 46266 | 13985850 | (cr) |

| Creditor | Code | Type |
|---|---|---|
| **Beech Grove Family Physicians**<br>Bankruptcy Department<br>PO Box 664134 Indianapolis,IN 46266 | 13985914 | (cr) |
| **Center for Diagnostic Imaging**<br>Bankruptcy Department<br>PO Bo 2303, Dept 163 Indianapolis,IN 46206 | 13985929 | (cr) |
| **Center for Orthopaedic Surgery**<br>Attn: Bankruptcy Department<br>8141 S Emerson Ave Ste. A Indianapolis,IN 46237 | 13985851 | (cr) |
| **Center Grove Estates**<br>4377 W County Line Rd<br>Greenwood,IN 46142 | 13985848 | (cr) |
| **Central IN Pulmonary**<br>Bankruptcy Department<br>1350 E County Line Rd, Ste H Indianapolis,IN 46227 | 13985912 | (cr) |
| **Chase**<br>Attn: Bankruptcy Department<br>340 South Cleveland Ave Bldg 370 Westerville,OH 43081 | 13985852 | (cr) |
| **CHASE**<br>Attn: Bankruptcy Dept.<br>Po Box 901003 Columbus,OH 43224 | 13985837 | (cr) |
| **Checknet**<br>Bankruptcy Department<br>746 East 1910 South, Ste 4 Provo,UT 84606 | 13985913 | (cr) |
| **Choice Recovery**<br>Attn: Bankruptcy Dept.<br>1550 Old Henderson Rd St Columbus,OH 43220 | 13985831 | (cr) |
| **Clarian Health Partners**<br>Attn: Bankruptcy Department<br>2212 Reliable Parkway Chicago,IL 60686 | 13985853 | (cr) |

| Creditor | Code | Type |
|---|---|---|
| **Comcast**<br>Bankruptcy Department<br>PO Box 3002 Southeastern,PA 19398 | 13985931 | (cr) |
| **Community Health Network**<br>Attn: Bankruptcy Department<br>1500 North Ritter Ave Indianapolis,IN 46219 | 13985854 | (cr) |
| **Community Hospital South**<br>Attn: Bankruptcy Department<br>1402 East Countyline Road Indianapolis,IN 46227 | 13985855 | (cr) |
| **Community Surgery Center South**<br>Bankruptcy Department<br>7184 Solutions Center Chicago,IL 60677 | 13985926 | (cr) |
| **Credence**<br>Bankruptcy Department<br>6045 Atlantic Blvd, Ste 210 Norcross,GA 30071 | 13985923 | (cr) |
| **Credit Collection Services**<br>Bankruptcy Department<br>Two Wells Ave., Dept. 7249 Newton,MA 02459 | 13985916 | (cr) |
| **Crossing Book Club**<br>C/O RJM Acquisitions<br>575 Underhill Blvd #224 Syosset,NY 11791 | 13985856 | (cr) |
| **CZ Trust**<br>C/O NCO FIN 02<br>507 Prudential Road Horsham,PA 19044 | 13985857 | (cr) |
| **DECA Financial Services**<br>C/o Scott Richards<br>5120 Commerce Circle #B Indianapolis,IN 46237 | 13985920 | (cr) |
| **Edgewood Family Dental**<br>Attn: Bankruptcy Department<br>5855 Madison Ave #H Indianapolis,IN 46227 | 13985858 | (cr) |

| Creditor | Code | Type |
|---|---|---|
| **Edgewood Family Dental**<br>Bankruptcy Department<br>5855 Madison Ave, Ste H Indianapolis,IN 46227 | 13985939 | (cr) |
| **Emergency Physicans of Indianapolis**<br>Attn: Bankruptcy Department<br>P.O. Box 7122 Dept 31 Indianapolis,IN 46207 | 13985859 | (cr) |
| **Equifax**<br>Attn: Bankruptcy Dept.<br>PO Box 740241 Atlanta,GA 30374 | 13985844 | (cr) |
| **Experian**<br>Attn: Bankruptcy Dept.<br>PO Box 2002 Allen,TX 75013 | 13985843 | (cr) |
| **Franciscan Alliance**<br>Bankruptcy Dept<br>28044 Network Place Chicago,IL 60673 | 13985925 | (cr) |
| **Friedmans Jewelers**<br>C/O Allgate Financial LLC<br>707 Skokie Blvd Ste. 375 Northbrook,IL 60062 | 13985860 | (cr) |
| **GLA Collection CO INC**<br>Attn: Bankruptcy Dept.<br>2630 Gleeson Ln Louisville,KY 40299 | 13985834 | (cr) |
| **GLA Collection Co, Inc**<br>Attn: Bankruptcy Department<br>2630 Gleeson Lane Jeffersontown,KY 40299 | 13985864 | (cr) |
| **GLA Collections Co, Inc**<br>Attn: Bankruptcy Department<br>2630 Gleeson Lane Jeffersontown,KY 40299 | 13985863 | (cr) |
| **GMC Credit Services**<br>Attn: Bankruptcy Department<br>1930 Thoreau Drive Ste. 100 Schaumburg,IL 60173 | 13985865 | (cr) |

| Creditor | Code | Type |
|---|---|---|
| **Goodman Campbell Brain & Spine**<br>Bankruptcy Department<br>7977 Solution Center Chicago,IL 60677 | 13985911 | (cr) |
| **Greenwood Orthopedics**<br>Bankruptcy Department<br>1550 E. County Line Rd, Ste 200 Indianapolis,IN 46227 | 13985924 | (cr) |
| **Healthcare Management**<br>C/O Miramed Rev Group<br>991 Oak Creek Drive Lombard,IL 60148 | 13985866 | (cr) |
| **Healthnet Billing Services**<br>C/O IMC Credit Services<br>6955 Hillsdale Court Indianapolis,IN 46250 | 13985870 | (cr) |
| **I C System INC**<br>Attn: Bankruptcy Dept.<br>Po Box 64378 Saint Paul,MN 55164 | 13985833 | (cr) |
| **IC Systems Inc.**<br>Bankruptcy Department<br>PO Box 64378 Saint Paul,MN 55164 | 13985930 | (cr) |
| **Immediate Care Center**<br>1001 N. Madison Avenue<br>Greenwood, IN 46142 | 13985871 | (cr) |
| **Immediate Care Center**<br>Bankruptcy Department<br>PO Box 4780 Bloomington,IN 47402 | 13985903 | (cr) |
| **Indiana Funeral Care**<br>Bankruptcy Department<br>6249 S East St, Ste B Indianapolis,IN 46227 | 13985934 | (cr) |
| **Indiana Gastroenterology**<br>Attn: Bankruptcy Department<br>Dept. 10019 P.O. Box 790126 Saint Louis,MO 63179 | 13985876 | (cr) |

| Creditor | Code | Type |
|---|---|---|
| **Indiana Heart Physicians**<br>C/O American Financial Credit<br>10333 N Meridian Street Ste. 270 Indianapolis,IN 46290 | 13985873 | (cr) |
| **Indiana Internal Medicine**<br>Attn: Bankruptcy Department<br>701 E County Line Road #101 Greenwood,IN 46143 | 13985872 | (cr) |
| **Indiana Periodontics, LLC**<br>Attn: Bankruptcy Department<br>622 N Madison Ave Greenwood,IN 46142 | 13985874 | (cr) |
| **Indiana University Hospital**<br>C/O GLA Collections CO, Inc<br>2630 Gleeson Lane Jeffersontown,KY 40299 | 13985862 | (cr) |
| **Indiana University Hospital**<br>C/O IMC Credit Services<br>6955 Hillsdale Court Indianapolis,IN 46250 | 13985867 | (cr) |
| **Indianapolis University Hospital**<br>Attn: Bankruptcy Department<br>550 University Blvd Indianapolis,IN 46202 | 13985875 | (cr) |
| **Indianapolis-Marion County PUB**<br>Attn: Bankruptcy Department<br>119 E Maple Street Jeffersonville,IN 47130 | 13985877 | (cr) |
| **Indy Rents**<br>Bankruptcy Department<br>3016 W Southport Rd Indianapolis,IN 46217 | 13985937 | (cr) |
| **Inland Collection Services**<br>Bankruptcy Dept<br>10 N Coronado Rd Indianapolis,IN 46234 | 13985921 | (cr) |
| **IU Health**<br>Bankruptcy Dept<br>250 N. Shadeland Ave Indianapolis,IN 46219 | 13985878 | (cr) |

| Creditor | Code | Type |
|---|---|---|
| **IU Health Phys-Emerg Med**<br>Bankruptcy Dept<br>PO Box 44994 Indianapolis,IN 46244 | 13985928 | (cr) |
| **IU Radiology Associates**<br>Attn: Bankruptcy Department<br>250 N. Shadeland Ave Indianapolis,IN 46219 | 13985879 | (cr) |
| **Marion County Superior Court**<br>49D07-1009-CC-40415<br>200 East Washington Street Indianapolis,IN 46204 | 13985846 | (cr) |
| **Marion County Superior Court**<br>49D02-1601-MF-1246<br>200 East Washington Street Indianapolis,IN 46204 | 13985840 | (cr) |
| **Marion County Wayne Township**<br>49K08-0401-SC-0640<br>5401 W. Washington St. Indianapolis,IN 46241 | 13985900 | (cr) |
| **Med-1 Solutions, LLC**<br>Bankruptcy Dept<br>517 US Highway 31 North Greenwood,IN 46142 | 13985836 | (cr) |
| **Medical Insurance Billing Systems**<br>Attn: Bankruptcy Department<br>Dept 002/P.O. Box 7728 Louisville,KY 40257 | 13985880 | (cr) |
| **Methodist Hospital**<br>C/O IMC Credit Services<br>6955 Hillsdale Court Indianapolis,IN 46250 | 13985868 | (cr) |
| **Mid America Clinical Labs**<br>Bankruptcy Department<br>PO Box 740658 Cincinnati,OH 45274 | 13985909 | (cr) |
| **MSD of Perry Township**<br>C/O Statewide Credit<br>6640 Intech Blvd Ste. 200 Indianapolis,IN 46278 | 13985881 | (cr) |

| Creditor | Code | Type |
|---|---|---|
| **Nations Recovery Center, Inc.**<br>Attn: Bankruptcy Department<br>P.O. Box 620421 Atlanta,GA 30362 | 13985882 | (cr) |
| **NCO Financial Services**<br>Attn: Bankruptcy Department<br>P.O. Box 15391 Wilmington,DE 19850 | 13985883 | (cr) |
| **OAK Motors INC**<br>Attn: Bankruptcy Dept.<br>9601 S Innovation Dr # 6 Daleville,IN 47334 | 13985841 | (cr) |
| **OrthoIndy**<br>Bankruptcy Dept<br>PO Box 6284 Indpls,IN 46206 | 13985908 | (cr) |
| **Otolaryngology Associates LLC**<br>c/o Kinum Collection Agency<br>2133 Upton Dr, Ste 126 Virginia Beach,VA 23454 | 13985905 | (cr) |
| **Perry Meridian High School**<br>Bankruptcy Department<br>401 W Meridian School Rd Indianapolis,IN 46217 | 13985938 | (cr) |
| **Planet Fitness**<br>Bankruptcy Department<br>9503 S. Cicero Ave. Oak Lawn,IL 60453 | 13985940 | (cr) |
| **PMHS Food Service**<br>Bankruptcy Department<br>6548 Orinco Ave Indianapolis,IN 46227 | 13985933 | (cr) |
| **PMMS**<br>C/O Statewide Credit<br>101 West Ohio Street 21st Floor Indianapolis,IN 46204 | 13985884 | (cr) |
| **Praxis Financial Solutions**<br>Attn: Bankruptcy Department<br>7301 N. Lincoln Ave., Ste. 110 Lincolnwood,IL 60712 | 13985885 | (cr) |

| Creditor | Code | Type |
|---|---|---|
| **Radiology Associates of Indianapolis**<br>Attn: Bankruptcy Department<br>1500 Albany Ste. 906 Beech Grove,IN 46107 | 13985886 | (cr) |
| **Radiology Associates of Indianapolis**<br>C/O Inland Collection Service<br>P.O. Box 17917 Indianapolis,IN 46217 | 13985887 | (cr) |
| **Radiology Associates of Indy**<br>Bankruptcy Department<br>533 E County Line Rd Ste 210 Greenwood,IN 46143 | 13985922 | (cr) |
| **Readers Digest Association**<br>Attn: Bankruptcy Department<br>P.O. Box 25860 Lehigh Valley,PA 18002 | 13985888 | (cr) |
| **Reisenfeld & Associates LPA LLC**<br>49D02-1601-MF-1246<br>3962 Red Bank Rd Cincinnati,OH 45227 | 13985839 | (cr) |
| **Rodale Books**<br>C/O RMCB Collection Agency<br>4 Westchester Plaza #110 Elmsford,NY 10523 | 13985889 | (cr) |
| **Rodale Books**<br>C/O Sunrise Credit Services, Inc.<br>260 Airport Plaza Farmingdale,NY 11735 | 13985890 | (cr) |
| **Rural Metro Ambulance**<br>C/O Progressive Financial Services<br>P.O. Box 22083 Tempe,AZ 85285 | 13985891 | (cr) |
| **Senex Services Corporation**<br>Attn: Bankruptcy Department<br>3500 Depauw Blvd Ste. 305 Indianapolis,IN 46268 | 13985892 | (cr) |
| **Southeast Anesthesiologists PC**<br>Bankruptcy Department<br>PO Box 6069, Dept 107 Indianapolis,IN 46206 | 13985919 | (cr) |

| Creditor | Code | Type |
|----------|------|------|
| **Southside Emergency Asso.** <br> C/O IMC Credit Services <br> 6955 Hillsdale Court Indianapolis,IN 46250 | 13985869 | (cr) |
| **Southside Family Physicians** <br> Attn: Bankruptcy Department <br> 8523 Madison Ave #A Indianapolis,IN 46227 | 13985893 | (cr) |
| **Southside Foot Clinic** <br> Bankruptcy Department <br> 33 E County Line Rd, Ste B Greenwood,IN 46143 | 13985917 | (cr) |
| **Specialized LOAN Servi** <br> Attn: Bankruptcy Dept. <br> 8742 Lucent Blvd Ste 300 Highlands Ranch,CO 80129 | 13985838 | (cr) |
| **Specialized Loan Service** <br> Attn: Bankruptcy Department <br> 8742 Lucent Blvd #300 Highlands Ranch,CO 80129 | 13985894 | (cr) |
| **St. Francis Hopsital** <br> C/O Accounts Revoery Bureau <br> 555 Van Reed Road Reading,PA 19610 | 13985895 | (cr) |
| **St. Francis Medical Group** <br> Attn: Bankruptcy Department <br> P.O. Box 664056 Indianapolis,IN 46226 | 13985896 | (cr) |
| **Sunbelt Rentals** <br> Attn: Bankruptcy Department <br> P.O. Box 409211 Atlanta,GA 30384 | 13985897 | (cr) |
| **THE LAW Office OF Melissa WINK** <br> C/O Eagle Accounts Group I <br> 7510 S. Madison Avenue Indianapolis,IN 46227 | 13985832 | (cr) |
| **The Little Clinic** <br> Bankruptcy Department <br> 2620 Elm Hill Pike Nashville,TN 37214 | 13985927 | (cr) |

| Creditor | Code | Type |
|---|---|---|
| **Time Magazine**<br>C/O North Shore Agency<br>P.O. Box 9205 Bethpage,NY 11714 | 13985898 | (cr) |
| **Tomahawk Village Apartments**<br>C/O Ayres Carr & Sullivan P.C.<br>251 East Ohio Street Ste. 500 Indianapolis,IN 46204 | 13985899 | (cr) |
| **Transunion**<br>Attn: Bankruptcy Dept.<br>PO Box 1000 Chester,PA 19022 | 13985842 | (cr) |
| **Trinity Group Financial**<br>c/o Andrews & Cox PC<br>9247 N Meridian St, Ste 101 Indianapolis,IN 46260 | 13985845 | (cr) |
| **U-Lease It**<br>Bankruptcy Department<br>1750 Elm St, Ste 1200 Manchester,NH 03104 | 13985932 | (cr) |
| **Ultra Body Fitness**<br>Bankruptcy Department<br>1168 N Main St Franklin,IN 46131 | 13985935 | (cr) |
| **Unity Physican Group**<br>Attn: Bankruptcy Department<br>P.O. Box 74518 Cincinnati,OH 45274 | 13985902 | (cr) |
| **Unity Physician Group**<br>C/O GLA Collections Co, Inc.<br>2630 Gleeson Lane Jeffersontown,KY 40299 | 13985861 | (cr) |
| **Unity Physician Group Financial**<br>Attn: Bankruptcy Deparment<br>P.O. Box 742518 Cincinnati,OH 45274 | 13985901 | (cr) |
| **Univ. Clin. Pathology Assoc. PC**<br>Bankruptcy Department<br>635 Barnhill Dr, Room A128 Indianapolis,IN 46227 | 13985906 | (cr) |

| Creditor | Code | Type |
|---|---|---|
| **Urology of Indiana** | 13985907 | (cr) |
| Bankruptcy Department | | |
| PO Box 6069, Dept 14 Indianapolis,IN 46206 | | |

### PACER Service Center

| | |
|---|---|
| **Receipt:** | 07/22/2016 13:18:25 |
| **User:** | re4983:4215910:4214715 |
| **Client:** | |
| **Description:** | Creditor List |
| | 16-05369-JMC-7 Creditor Type: All |
| **Pages:** | 4 ($0.40) |

Last updated: 7/22/2016 1:18 pm (just now)







After Recording Return To:
INVESTAID CORPORATION
24315 NORTHWESTERN HWY STE. 100
SOUTHFIELD, MICHIGAN 48075
Loan Number:

———————————— [Space Above This Line For Recording Data] ————————————

## MORTGAGE

MIN:

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated   MAY 25, 2006                , together
with all Riders to this document.
(B)  "Borrower" is   CLIFFORD TAWNEY, A SINGLE MAN

Borrower is the mortgagor under this Security Instrument.
(C)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security
Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number
of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D)  "Lender" is   INVESTAID CORPORATION

Lender is a   MICHIGAN CORPORATION                                                            organized
and existing under the laws of   MICHIGAN
Lender's address is   24315 NORTHWESTERN HWY STE. 100, SOUTHFIELD,
MICHIGAN 48075

INDIANA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS     *DocMagic* 800-649-1362
Form 3015 01/01                                Page 1 of 13                            www.docmagic.com



CT

05/31/06 12:05PM WANDA MARTIN MARION CTY RECORDER     JNV  48.00  PAGES: 18
Inst # 2006-0080408

PDF created with pdfFactory trial version www.pdffactory.com

**(E)** "Note" means the promissory note signed by Borrower and dated  MAY 25, 2006  .
The Note states that Borrower owes Lender  EIGHTY-SIX THOUSAND SEVEN HUNDRED
TWENTY AND 00/100            Dollars (U.S. $ 86,720.00           ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
JUNE 1, 2036  .
**(F)** "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
**(G)** "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
**(H)** "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are
to be executed by Borrower [check box as applicable]:

| | | | |
|---|---|---|---|
| X̲ | Adjustable Rate Rider | ̲ | Planned Unit Development Rider |
| ̲ | Balloon Rider | ̲ | Biweekly Payment Rider |
| ̲ | 1-4 Family Rider | ̲ | Second Home Rider |
| ̲ | Condominium Rider | x̲ | Other(s) [specify] |
| | | | PREPAYMENT RIDER |

**(I)** "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.
**(J)** "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.
**(K)** "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.
**(L)** "Escrow Items" means those items that are described in Section 3.
**(M)** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in
lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N)** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O)** "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note,
plus (ii) any amounts under Section 3 of this Security Instrument.
**(P)** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter. As used in this Security Instrument,
"RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan"
even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(Q)** "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that
party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications
of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.

---

cT

PDF created with pdfFactory trial version www.pdffactory.com

For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the

COUNTY of Marion :

[Type of Recording Jurisdiction]         [Name of Recording Jurisdiction]

LOT 17 NUMBERED 17 IN VALLEY VIEW FARMS, SECTION 1, A SUBDIVISION IN MARION COUNTY, INDIANA, AS PER PLAT THEREOF RECORDED OCTOBER 4, 1988 AS INSTRUMENT NO. 88-101242, IN THE OFFICE OF THE RECORDER OF MARION COUNTY, INDIANA.
A.P.N.: 500-5032787

which currently has the address of        8512 GREEN VALLEY DRIVE

[Street]

Indianapolis     , Indiana    46217    ("Property Address"):

[City]                  [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.    **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of

INDIANA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3015 01/01       Page 3 of 13              DocMagic *DocMagic* 800-649-1362
www.docmagic.com

CT

PDF created with pdfFactory trial version www.pdffactory.com

its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying

---

INDIANA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3015 01/01                                     Page 4 of 13

DocMagic *eFaxes* 800-649-1362
www.docmagic.com

*CT*

the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

---

PDF created with pdfFactory trial version www.pdffactory.com

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave

cT

PDF created with pdfFactory trial version www.pdffactory.com

materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

    **9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

    Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

    If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

    **10.  Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

    Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

    Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

CT

PDF created with pdfFactory trial version www.pdffactory.com

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate

CT

PDF created with pdfFactory trial version www.pdffactory.com

as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's

DocMagic *EFerns* 800-649-1362
www.docmagic.com

cT

PDF created with pdfFactory trial version www.pdffactory.com

address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will

*DocMagic* *800-649-1362*
*www.docmagic.com*

CT

PDF created with pdfFactory trial version www.pdffactory.com

state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified

cT

PDF created with pdfFactory trial version www.pdffactory.com

in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Valuation and Appraisement.** Borrower waives all right of valuation and appraisement.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)  
CLIFFORD TAWNEY          -Borrower

_____ (Seal)  
                         -Borrower

_____ (Seal)  
                         -Borrower

_____ (Seal)  
                         -Borrower

_____ (Seal)  
                         -Borrower

_____ (Seal)  
                         -Borrower

Witness:                     Witness:

_____      _____

INDIANA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS  
Form 3015 01/01          Page 12 of 13

*DocMagic* 800-649-1362  
www.docmagic.com

CT

PDF created with pdfFactory trial version www.pdffactory.com

State of Indiana

County of   MORGAN                          SS:

    Before me the undersigned, a Notary Public for          County, State of Indiana,
personally appeared   CLIFFORD TAWNEY

the execution of this instrument this   25TH day of   MAY, 2006                          and acknowledged



Notary Signature

_____

Printed/Typed Name          Notary Public

(Seal)

My commission expires: _____

This instrument was prepared by:          County of residence: _____

    CHRISTINE GORDON

CARYN C. COLLINS
NOTARY PUBLIC, STATE OF INDIANA
RESIDENT OF HENDRICKS COUNTY
My Commission Expires: August 4, 2011

INDIANA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          *DocMagic* 800-649-1362
Form 3015 01/01                          Page 13 of 13          www.docmagic.com

CT

# PREPAYMENT PENALTY RIDER

Loan Number: ▮▮▮▮▮▮

Date: MAY 25, 2006

Borrower(s): CLIFFORD TAWNEY


THIS PREPAYMENT RIDER (the "Rider") is made this 25th day of MAY , 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of INVESTAID CORPORATION

("Lender"). The Security Instrument encumbers the Property more specifically described in the Security Instrument and located at

8512 GREEN VALLEY DRIVE, Indianapolis, Indiana 46217
[Property Address]

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.    **PREPAYMENT CHARGE**
The Note provides for the payment of a prepayment charge as follows:

**. BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.
If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may he offset by an interest rate increase. If this Note provides for a variable interest rate or finance charge, and the interest rate or finance charge at any time exceeds the legal limit under which a Prepayment penalty is allowed, then the Note Holder's right to assess a Prepayment penalty will be determined under applicable law.

---

MULTISTATE PREPAYMENT PENALTY RIDER
04/30/04                          Page 1 of 2                          *DocMagic* 800-849-1362
                                                                        www.docmagic.com

If within TWENTY-FOUR ( 24 ) months from the date of execution of the Security Instrument I make a full prepayment, I will pay a prepayment charge in an amount equal to TWO AND 000/1000 percent ( 2.000 %) of the original Principal amount of the Loan."

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_____ (Seal)    _____ (Seal)
CLIFFORD TAWNEY    -Borrower                     -Borrower

_____ (Seal)    _____ (Seal)
                     -Borrower                     -Borrower

_____ (Seal)    _____ (Seal)
                     -Borrower                     -Borrower

PDF created with pdfFactory trial version www.pdffactory.com

MIN ██████████████    Loan Number: ██████████

# ADJUSTABLE RATE RIDER
**(LIBOR Six-Month Index (As Posted By Fannie Mae) - Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this 25th day of    MAY, 2006    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Adjustable Rate Note (the "Note") to INVESTAID CORPORATION, A
MICHIGAN CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and located at:

8512 GREEN VALLEY DRIVE, Indianapolis, Indiana 46217
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND
THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of    10.100 %. The Note provides for changes
in the interest rate and the monthly payments, as follows:

## 4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
**(A)    Change Dates**
The interest rate I will pay may change on the 1st    day of JUNE, 2009    ,
and on that day every 6th month thereafter. Each date on which my interest rate could change is called
a "Change Date."
**(B)    The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market
based on quotations of major banks, as posted by Fannie Mae through electronic transmission or by telephone
or both through electronic transmission and by telephone. The most recent Index figure available as of the
date 45 days before each Change Date is called the "Current Index."
If the Index is no longer available, or is no longer posted either through electronic transmission or by
telephone, the Note Holder will choose a new Index that is based upon comparable information. The Note
Holder will give me notice of this choice.
**(C)    Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding
SEVEN AND 100/1000    percentage points (    7.100 %) to the Current
Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS POSTED BY FANNIE MAE)--Single Family
Fannie Mae MODIFIED INSTRUMENT
Form 3136 1/01    Page 1 of 3

*DocMagic* ☎ 800-649-1362
www.docmagic.com

CT

PDF created with pdfFactory trial version www.pdffactory.com

percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)    Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 13.100 % or less than 10.100 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000 percentage points ( 1.000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 16.100 %. My interest rate will never be less than 10.100 %.

**(E)    Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)    Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS POSTED BY FANNIE MAE)--Single Family
Fannie Mae MODIFIED INSTRUMENT
Form 3136 1/01                                    Page 2 of 3

DocMagic *eServ*  800-649-1362
www.docmagic.com

CT

PDF created with pdfFactory trial version www.pdffactory.com

to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
CLIFFORD TAWNEY          -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS POSTED BY FANNIE MAE)--Single Family
Fannie Mae MODIFIED INSTRUMENT
Form 3136 1/01                    Page 3 of 3

*DocMagic* 800-649-1362
www.docmagic.com

PDF created with pdfFactory trial version www.pdffactory.com



MIN: ▉▉▉▉▉▉▉▉▉              Loan Number: ▉▉▉▉▉▉▉▉

## ADJUSTABLE RATE NOTE
### (LIBOR Six-Month Index (As Posted By Fannie Mae) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

MAY 25, 2006              SOUTHFIELD            MICHIGAN
[Date]                      [City]               [State]

8512 GREEN VALLEY DRIVE, Indianapolis, Indiana 46217
[Property Address]

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 86,720.00        (this amount is called "Principal"), plus interest, to the order of Lender. Lender is INVESTAID CORPORATION, A MICHIGAN CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    10.100 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3.  PAYMENTS

**(A)  Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the    1st    day of each month beginning on JULY 1 2006  . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JUNE 1, 2036      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  24315 NORTHWESTERN HWY STE. 100, SOUTHFIELD, MICHIGAN 48075

or at a different place if required by the Note Holder.

**(B)  Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 767.45          . This amount may change.

**(C)  Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

---

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS POSTED BY FANNIE MAE)--Single Family
Fannie Mae MODIFIED INSTRUMENT            Page 1 of 5

Form 3518 1/01
DocMagic ☎ 800-649-1362
www.docmagic.com

CT

PDF created with pdfFactory trial version www.pdffactory.com

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A)   Change Dates

The interest rate I will pay may change on the 1st day of JUNE, 2009 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B)   The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market based on quotations of major banks, as posted by Fannie Mae through electronic transmission or by telephone or both through electronic transmission and by telephone. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, or is no longer posted either through electronic transmission or by telephone, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C)   Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding SEVEN AND 100/1000 percentage points ( 7.100 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D)   Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 13.100 % or less than 10.100 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000 percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 16.100 %. My interest rate will never be less than 10.100 %.

(E)   Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F)   Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the telephone number of a person who will answer any question I may have regarding the notice.

**5.   BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

---

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS POSTED BY FANNIE MAE)--Single Family
Fannie Mae MODIFIED INSTRUMENT                    Page 2 of 5

Form 3518 1/01
DocMagic 800-649-1362
www.docmagic.com

CT

PDF created with pdfFactory trial version www.pdffactory.com

**6.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)   Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15
calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be
5.000  % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

**(B)   Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)   Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)   No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)   Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

---

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS POSTED BY FANNIE MAE)--Single Family
Fannie Mae MODIFIED INSTRUMENT                    Page 3 of 5

Form 3518 1/01
DocMagic 800-849-1362
www.docmagic.com

CT

PDF created with pdfFactory trial version www.pdffactory.com

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE NOTE–LIBOR SIX-MONTH INDEX
(AS POSTED BY FANNIE MAE)–Single Family
Fannie Mae MODIFIED INSTRUMENT            Page 4 of 5

Form 3518 1/01
DocMagic ☎ 800-649-1362
www.docmagic.com

CT

PDF created with pdfFactory trial version www.pdffactory.com

You are not obligated to pay any money unless you sign this contract and return it to the Seller/Lender.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Clifford Tawney_ _____ (Seal)      _____ (Seal)
CLIFFORD TAWNEY                -Borrower                              -Borrower

_____ (Seal)      _____ (Seal)
                    -Borrower                              -Borrower

_____ (Seal)      _____ (Seal)
                    -Borrower                              -Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE
INVESTAID CORPORATION

BY _____

KAREN SEXTON
VICE PRESIDENT

*[Sign Original Only]*

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS POSTED BY FANNIE MAE)--Single Family
Fannie Mae MODIFIED INSTRUMENT          Page 5 of 5

Form 3518 1/01
DocMagic ℰₐ₂ₐₘₚ 800-649-1362
www.docmagic.com

PDF created with pdfFactory trial version www.pdffactory.com

**EXHIBIT C**

## ASSIGNMENT OF MORTGAGE

For valuable consideration, receipt of which is hereby acknowledged, Mortgage Electronic Registration Systems, Inc. as nominee for Investaid Corporation, does hereby assign, transfer, bargain and convey to Deutsche Bank National Trust Company, as Trustee on behalf of the holders of the Terwin Mortgage Trust 2006-11ABS, Asset-Backed Certificates, TMTS Series 2006-11ABS, without recourse, all of its right, title and interest, in the following mortgage which was executed by Clifford Tawney dated May 25, 2006, and recorded May 31, 2006 as Instrument Number 2006-0080408 in the Office of the Recorder of Marion County, Indiana, without warranty and without recourse, including the underlying note and loan documents associated therewith, described as follows:

LOT 17 NUMBERED 17 IN VALLEY VIEW FARMS, SECTION 1, A SUBDIVISION IN MARION COUNTY, INDIANA, AS PER PLAT THEREOF RECORDED OCTOBER 4, 1988 AS INSTRUMENT NO. 88-101242, IN THE OFFICE OF THE RECORDER OF MARION COUNTY, INDIANA.

Tax Identification Number: 5032787
More commonly known as: 8512 Green Valley Dr., Indianapolis, IN 46217

This Assignment of Mortgage is executed by Mortgage Electronic Registration Systems, Inc. as nominee for Investaid Corporation on the condition it is without warranty and without recourse.

Dated this _14_ day of _Dec_____, 2009

Mortgage Electronic Registration Systems, Inc. as nominee for Investaid Corporation

By: _____
_Becky North_____, Its Authorized Representative
Vice President

STATE OF _Mn_____ )
                                          ) SS:
COUNTY OF _Dakota____ )

Before me, the undersigned, a Notary Public in and for said County and State, this _14_ day of _Dec_____, 2009, personally appeared _Becky North_____, an authorized representative of Mortgage Electronic Registration Systems, Inc. as nominee for Investaid Corporation, who acknowledged the execution of the foregoing Assignment of Mortgage, and who, having been duly sworn, stated that the representations therein contained are true.

In witness whereof, I have hereunto subscribed my name and affixed my official seal.

Signature: _____
Printed: James A. Chua
Notary Public

My Commission Expires:
_____

Resident of _Dakota_____ County,

JAMES A. CHUA
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2013

THIS INSTRUMENT PREPARED BY: The Law Firm of Krisor & Associates, John D. Krisor, Jr., P.O. Box 6200, South Bend, IN 46660

I affirm, under the penalties for perjury, that I have taken reasonable care to redact each social security number in this document, unless required by law.

_____
Brooks J. Grainger (19362-71)

12/22/2009 09:08 Julie Voorhies MARION COUNTY RECORDER TPP 15.50 PAGES: 1

Cost # 2009 0142352



Processed

FEB 19 2010

SLS Loan #: ███████

**EXHIBIT D**

## LOAN MODIFICATION AGREEMENT
### AMORTIZING
### (Providing for Step Interest rate)

RECEIVED
FEB 19 2010
$500.00
By 500.00  4P637

This Loan Modification Agreement ("Agreement"), made and effective February 1, 2010 between CLIFFORD R TAWNEY ("Borrower") and Specialized Loan Servicing LLC ("Servicer"), amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") dated May 25, 2006 and recorded in public records of the county in which the property is located, and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at:

8512 GRN VLY DRIVE
INDIANAPOLIS, IN 46217

commonly known as the property address.

Whereas, Borrower and Servicer desire to modify the interest rate as further outlined in Paragraph 2 of this Agreement, for a limited period of time to assist the Borrower;

For purposes of this Agreement, unless the context clearly requires otherwise, all capitalized terms which are used but not otherwise defined herein shall have the respective meanings assigned to such terms in the Note or Security Instrument.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of February 1, 2010, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $93,670.39 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized. Such balance is calculated by taking the Unpaid Principal Balance and adding (i) any amounts capitalized, (ii) any escrow advances, (iii) any corporate advances (amounts expended by the Servicer on behalf of the Borrower) and (iv) any unpaid interest, and subtracting from that amount any amounts that the Servicer has agreed to write off. As of February 1, 2010, interest in the amount of $4,440.99 has not been paid on the Borrower's loan ("Delinquent Interest"). The Delinquent Interest has not been included in the calculation of the Unpaid Principal Balance. Borrower promises to pay such Delinquent Interest, if not sooner paid, in full on the Maturity Date.

2.  Borrower promises to pay the Modified Unpaid Principal Balance, plus interest to the order of the Note Holder. During the first period of this Agreement, interest will be charged on the Unpaid Principal Balance, at the yearly rate of 3.000%, from the Modification Date and Borrower promises to pay monthly payments of principal and interest in the amount of $429.12 beginning on March 1, 2010.

    During the second period, interest will be charged at the yearly rate of 4.500% from February 1, 2012, and Borrower shall pay monthly payments of principal and interest in the amount of $501.23 beginning on March 1, 2012.

During the final period and continuing thereafter until the Maturity Date, interest will be charged at the yearly rate of 6.000% from February 1, 2013 and Borrower shall pay monthly payments of principal and interest in the amount of $576.69 beginning on March 1, 2013 and shall continue the monthly payments thereafter on the same day of each succeeding month until principal and interest are paid in full.

If on June 1, 2036 (the "Maturity Date" or "Modified Maturity Date"), Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Modified Maturity Date.

3.      Place of Payment. Borrower must make the monthly payments at P.O. Box 105219, Atlanta, GA 30348 -5219, Attn: Remittance Processing or such other place as Servicer may require.

4.      Partial Payments. Borrower may make a full prepayment or partial prepayment without paying any prepayment charge. Servicer may apply the prepayment to the accrued and unpaid interest on the prepayment amount before applying the prepayment to reduce the principal amount under this Agreement. If Borrower makes a partial prepayment, there will be no changes in the payment due dates or the amount of the monthly payments unless Servicer agrees in writing to those changes

5.      If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Servicer's prior written consent, Servicer may require immediate payment in full of all sums secured by the Security Instrument. If Servicer exercises this option, Servicer shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

6.      Borrower also will comply with all other covenants, agreements, riders to (except those specifically deleted herein) and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a)     all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, and

(b)     all terms and provisions of any adjustable rate rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

7.  Borrower understands and agrees that:

(a)  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)  All covenants, agreements, stipulations, and conditions in the Note and Security Instrument including riders to the Security Instrument except those specifically deleted herein, shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Servicer is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Servicer.

(c)  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)  All costs and expenses incurred by Servicer in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Servicer.

(e)  Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Servicer, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)  Borrower acknowledges he/she/they have been given the opportunity to review this Agreement with legal counsel of his/her/their own choice prior to execution of the Agreement.

8.  **In the event there has been a prior bankruptcy or an ongoing bankruptcy, notwithstanding anything in this Agreement to the contrary, including without limitation the provisions in the preceding paragraph, Borrower and Servicer acknowledge and agree that Borrower's personal liability under the Note has been discharged in a Chapter 7 or a Chapter 13 Bankruptcy or is subject to an ongoing bankruptcy proceeding that this Agreement shall not be construed as: (1) an attempt by Note Holder to collect the underlying debt from Borrower's personal assets; (2) as a violation of the post-discharge injunction set forth in 11 U.S.C. Section 524; and/or a violation of the automatic stay provisions of 11 U.S.C Section 362. On the contrary, Borrower and Note Holder desire to modify the underlying loan terms in order to facilitate Borrower's full compliance with the terms of the Note and Security Instrument.**

_Clifford Tawney_                    2-18-10
CLIFFORD R TAWNEY                     Date


Specialized Loan Servicing LLC, as Servicer

By:  _____
Name Printed

Title:                    Susan Miller
                         Vice President
                         Cash Operations